```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES LIABILITY INSURANCE
COMPANY,

                    Plaintiff,
                                                    MEMORANDUM & ORDER
        -against-                                   14-CV-2155(JS)(AKT)

ANTHONY M. LISENA, ROCCO LISENA & SON
LANDSCAPING, INC., and LUIS TORRES
LUNA, a minor by his Father and
natural guardian PEDRO RAFAEL
TORRES AVILES,

                    Defendants.
----------------------------------------X
LUIS TORRES LUNA, a Minor by his
Father and Natural Guardian PEDRO
RAFAEL TORRES A VILES,

        Third-Party Plaintiff,

        -against-

MERCHANTS PREFERRED INSURANCE COMPANY,

        Third-Party Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:            Steven Verveniotis, Esq.
                          Frank Robert Malpigli, Esq.
                          Miranda Sambursky Slone Sklarin
                            Verveniotis LLP
                          240 Mineola Boulevard
                          Mineola, NY 11501

For Defendant and
Third-Party Plaintiff:
Luis Torres Luna
a minor by his Father
and natural guardian
Pedro Rafael
Torres Aviles             Jonathan Isidor Edelstein, Esq.
                          271 Madison Avenue, 20th Floor
                          New York, NY 10016
```

```
                         David S. Dender, Esq.
                         The Bongiorno Law Firm PLLC
                         250 Mineola Boulevard
                         Mineola, NY 11501
```

```
For Defendant:
Anthony M. Lisena
and Rocco Lisena &
Son Landscaping, Inc.:   No Appearances.

For Third-Party
Defendant:
Merchants Preferred
Insurance Company:       Agnieszka Anna Wilewicz, Esq.
                         Steven E. Peiper, Esq.
                         Hurwitz & Fine, P.C.
                         1300 Liberty Building
                         Buffalo, NY 14202
```

SEYBERT, District Judge:

Plaintiff United States Liability Insurance Company ("U.S. Liability," or "USLI") commenced this action against Defendants Anthony M. Lisena, Rocco Lisena & Son Landscaping ("Lisena & Son"), Inc., Miguel A. Vasquez, 3rd, Miguel A. Vasquez,[1] and Luis Torres Luna[2] ("Luna"), seeking a declaration that an umbrella insurance policy that it issued does not cover damages incurred in automobile accident involving a car and a dump truck. Pending before the Court is U.S. Liability's motion for summary judgment (Docket Entry 64), Defendant and Third-Party Plaintiff

---

[1] Both Miguel A. Vasquez, 3rd, and Miguel A. Vasquez were terminated as defendants in this action on December 3, 2014. (See, Docket Entry 31.)

[2] Luna is a minor and is therefore represented in this action his father and natural guardian Pedro Rafael Torres Aviles.

Luna's motion for summary judgment (Docket Entry 63), and Third-Party Defendant Merchants Preferred Insurance Company's ("Merchants") motion to dismiss (Docket Entry 62). For the reasons that follow, U.S. Liability's motion is denied, Luna's motion is granted, and Merchants' motion is granted.

BACKGROUND

On December 9, 2013, Luna was a passenger in a Volkswagen car (the "Car") owned by defendant Miguel Vasquez and driven by defendant Miguel Vasquez III. (Luna's 56.1 Stmt., Docket Entry 63-2, ¶ 1.) That same day, defendant Anthony M. Lisena was driving a 1994 Mitsubishi Dump Truck (the "Dump Truck" or the "Truck"). (Luna's 56.1 Stmt. ¶ 2.) As the car proceeded southward along Glen Cove Avenue, in Glen Cove, New York, Anthony Lisena made a left turn from northbound Glen Cove Avenue onto Morris Avenue and the two vehicles collided causing defendant Luna to sustain injuries. (Luna's 56.1 Stmt. ¶¶ 1-3.) At the time of the accident, Anthony Lisena was working for Lisena & Son and was on his way to dump the materials in the back of his Truck. (USLI's 56.1 Smt., Docket Entry 65, ¶ 60.)

The Dump Truck is a commercial vehicle owned by Lisena & Son and Anthony Lisena is the CEO of Lisena & Son. (Luna's 56.1 Stmt. ¶¶ 4-5; USLI's 56.1 Stmt. ¶ 49.) However, the parties dispute whether Anthony Lisena has a financial interest in Lisena

3

& Son.  (See Luna's 56.1 Stmt. ¶ 6; USLI's Counterstmt., Docket Entry 69, ¶ 6.)

After the accident, Luna commenced a personal injury action against Miguel Vasquez, Anthony Lisena and Lisena & Son, captioned Luna v. Vasquez et. al., Index No. 015053/2013 ("the State Action").  (Luna's 56.1 Stmt. ¶ 7.)  U.S. Liability subsequently filed this case on April 4, 2014, seeking a declaratory judgment clarifying that its Umbrella Policy does not cover any damages stemming from the accident.  (See Am. Compl., Docket Entry 26, at ¶¶ 37-44.)

Three separate insurance policies are at issue in this case.  The Harleysville Insurance Company of New York ("Harleysville") issued the first policy to Lisena & Son Landscaping, Inc. on September 1, 2013 (the "Harleysville Policy").  (USLI's 56.1 Stmt., ¶ 25.)  The Harleysville Policy lists the Dump Truck within the "Business Auto schedule" and also lists Anthony Lisena within the "Drivers Schedule."  (USLI's 56.1 Smt. ¶¶ 26-27.)  There is no dispute that the Harleysville Policy provides insurance coverage for the accident at issue, and Harleysville is defending both Anthony Lisena and Lisena & Son in the underlying State Court Action.  (USLI's 56.1 Smt. ¶ 28.)

The second policy was issued by Merchants to Anthony Lisena and Monique Lisena on August 20, 2013 (the "Merchants Policy").  (USLI's 56.1 Stmt. ¶ 31.)  The Merchants Policy lists

4

only two personal automobiles on its declarations page, a 2003 Dodge Grand Caravan and a 1996 Dodge Ram 2500. (USLI's 56.1 Stmt. ¶ 36.) Moreover, the Merchants Policy does not list the Dump Truck in its declarations. (USLI's 56.1 Stmt. ¶ 37.) Merchants has disclaimed coverage for the accident. (USLI's 56.1 Stmt. ¶ 38; Luna's 56.1 Stmt. ¶ 24.) In addition, Luna does <u>not</u> argue in its motion for summary judgment that the Merchant Policy should provide coverage.

Finally, U.S. Liability issued a personal umbrella liability policy to Anthony M. Lisena and Monique Lisena, on September 1, 2013 (the "Umbrella Policy". (Luna's 56.1 Stmt. ¶ 8.) The Umbrella Policy provides up to $ 1,000,000 in excess personal liability coverage and names both Anthony Lisena and Monique Lisena as insureds. (Umbrella Policy, Docket Entry 63-7, at 1;[3] Luna's 56.1 Stmt. ¶ 9.) Since the Umbrella Policy is primarily at issue in this case, the Court will discuss its relevant provisions in some depth.

Because the Umbrella Policy provides excess insurance coverage, it only becomes applicable when a qualifying "Underlying Insurance" policy provides coverage. (<u>See</u> Umbrella Policy § I(P).) The Umbrella Policy specifically states that "[i]f you are legally liable to pay damages for a loss to which this insurance applies,

---

[3] The page numbers of the Umbrella Policy are those generated by the Electronic Case Filing System.

5

we will pay your net loss in excess of the retained limit." (Umbrella Policy § II.) The term "loss" is defined as "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in bodily injury and/or property damage . . . ." (Umbrella Policy § I(H).) In addition, "Underlying Insurance" is defined as follows:

> Underlying Insurance means any policy with the greater limit of:
> 1. The limit shown for that policy in the DECLARATIONS in Item 6., Required Underlying Insurance Coverage; or
> 2. The limit shown for that policy on the Schedule of Underlying Insurance Endorsement (if the Schedule of Underlying Insurance Endorsement is attached to this policy) or Specified Automobile Endorsement (if the Specified Automobile Endorsement is attached to this policy) or Addition of Scheduled Watercraft endorsement (if the Addition of Scheduled Watercraft is attached to this policy); or
> 3. The sum of the applicable limits of liability of all underlying insurance available to any insured for injury or damage to which this coverage applies (other than insurance written specifically as excess over the Company's limit of liability under this policy); without reduction for defense costs.

(Umbrella Policy § I(R).) Thus, the Term "Underlying Insurance" is defined broadly based upon policy limits and the definition does not reference specific policy numbers, or other parameters.

The Policy also required Anthony and Monique Lisena to maintain certain specific underlying insurance policies listed in

6

Item 6 of the declarations page. The full text of Item 6 is as follows:

**ITEM 6:** Required Underlying Insurance Coverage. You agree that the higher of the MINIMUM UNDERLYING LIMITS below, or the limit shown on the PCL-117 Schedule of Underlying Insurance Endorsement (if the PCL-117 is shown below):
(1) is in force and will continue in force; and
(2) insures all residences, automobiles, recreational vehicles or watercraft owned by, leased or regularly furnished to you.

| Type of Policy or Coverage | Minimum Underlying Limits | | |
|---|---|---|---|
| *Automobile Liability* | Dual Limit | OR | Single Limit |
| Bodily Injury | $250,000 each person<br>$500,000 each accident | | $300,000 Bodily Injury and Property Damage Combined |
| Property Damage | $100,000 each accident | | |
| *Comprehensive Personal Liability & Rental Property Liability* | | | Single Limit |
| | | | $500,000 Bodily Injury, Personal Injury and Property Damage Combined |
| *Recreational Vehicle Liability* | Dual Limit | OR | Single Limit |
| Bodily Injury | $250,000 each person<br>$500,000 each accident | | $300,000 Bodily Injury and Property Damage Combined |
| Property Damage | $100,000 each accident | | |
| *Watercraft Liability* | Dual Limit | OR | Single Limit |
| Bodily Injury | $250,000 each person<br>$500,000 each accident | | $300,000 Bodily Injury and Property Damage Combined |
| Property Damage | $100,000 each accident | | |
| *Uninsured/Underinsured Motorist Liability* | Dual Limit | OR | Single Limit |
| Bodily Injury | $250,000 each person<br>$500,000 each accident | | $300,000 Bodily Injury |

(Umbrella Policy at 2.)

In addition, the Umbrella Policy contains a number of exclusions. The Policy excludes coverage for "a loss . . . arising out of any automobile provided to any insured by the employer of any insured, it's replacement or substitute unless underlying insurance provides coverage for the loss." (Umbrella Policy § III(T).) The Policy also excludes coverage for a loss "[c]aused

7

by your business or business property unless underlying insurance provides coverage for the loss." (Umbrella § III(G)). "Business" is defined as "any employment, trade, profession, occupation, or any other enterprise in which any insured has a financial interest, including farming." (Umbrella Policy § I(D).) Moreover, the Umbrella Policy includes an endorsement that modifies the definition of the term "Automobile." The endorsement provides in relevant part:

> It is agreed:
>
> I. DEFINITIONS, B. Automobile, is deleted in its entirety and replaced with the following:
>
> B. Automobile means:
> 1. A private passenger motor vehicle, motorcycle, moped or motor home;
> 2. A vehicle designed to be pulled by a private passenger motor vehicle or motor home; or
> 3. A farm wagon or farm implement while towed by a private passenger motor vehicle or motor home.

(Umbrella Policy § I at 17; USLI's Br. at 12.)

The parties vehemently dispute whether the Umbrella Policy provides coverage for damages sustained in the accident on December 9, 2013. In its motion for summary judgment, U.S. Liability principally argues that coverage is excluded by the provisions of the Umbrella Policy because the accident involved a commercial vehicle that was used in the course of a business activity. (See, USLI's Br., Docket Entry 64-30, at 10-16.) Conversely, Luna argues in his cross-motion that the Umbrella

8

Policy's coverage is broad enough to cover the accident because the Harleysville Policy meets the definition of "Underlying Insurance" in the Umbrella Policy, triggering coverage. (See Luna's Br., Docket Entry 63-1, at 5-8.)

DISCUSSION

The Court will first set forth the applicable legal standard for the parties' motions for summary judgment before turning to their arguments more specifically.

I. Legal Standard

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (internal quotation marks and citation omitted); see also FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). The burden of proving that there is no genuine issue of material fact rests with the moving party.

Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 218 (1986) (citation omitted). "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp., 450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

## II. Underlying Insurance Exists, Triggering Coverage Under the Umbrella Policy

U.S. Liability's Umbrella Policy makes clear that it does not provide insurance coverage unless applicable "Underlying Insurance" provides coverage for the loss at issue. (See Umbrella Policy §§ I(P), II.) Although Harleysville is providing coverage for the accident, the parties dispute whether the Harleysville Policy constitutes "Underlying Insurance" that can trigger the

excess coverage available under the Umbrella Policy. (USLI's Br. at 14; Luna's Br. at 6.)

Under New York law, "'[c]ourts bear the responsibility of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies.'" Labate v. Liberty Mut. Ins. Co., 45 A.D.3d 811, 812, 847 N.Y.S.2d 128, 129 (2d. Dep't 2007) (quoting Sanabria v. Am. Home Assur. Co., 68 N.Y.2d 866, 868, 501 N.E.2d 24, 24, 508 N.Y.S.2d 416 (N.Y. 1986). Moreover, "[a] contract of insurance must be read as a whole, including any introductory clause or heading, to determine the intent of the parties." See Mazzaferro v. RLI Ins. Co., 50 F.3d 137, 140 (2d Cir. 1995) (internal quotation marks and citations omitted). When the provisions of a policy "are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement. Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d 323, 328 (S.D.N.Y. 2014). However, when the policy is ambiguous, its language must be construed against the drafter and in favor of the insured. See U.S. Fid. & Guar. Co. v. Annunziata, 67 N.Y.2d 229, 232, 492 N.E.2d 1206, 1207, 501 N.Y.S.2d 790 (N.Y. 1986). "[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy." Mostow v. State Farm Ins.

11

Companies, 88 N.Y.2d 321, 326-27, 668 N.E.2d 392, 645 N.Y.S. 2d 421 (N.Y. 1996).

Luna argues that because the Harleysville Policy meets the definition of "Underlying Insurance" in the Umbrella Policy, excess coverage exists. (Luna's Br. at 5-8). Conversely, U.S. Liability argues in opposition that the excess coverage in the Umbrella Policy was never triggered because the Merchants Policy is the only automobile policy that can serve as "Underlying Insurance," and the Merchants Policy does not provide coverage for the accident. (USLI's Opp. Br., Docket Entry 67, at 17-19.)

In furtherance of its argument, U.S. Liability relies heavily upon the Second Department's decision in Hasbani v. Nationwide Mut. Ins. Co., 98 A.D.3d 563, 563, 949 N.Y.S.2d 489, 490 (2d Dep't 2012). In Hasbani, the defendant insurance company issued a personal umbrella policy to an insured whose car was involved in an accident. Id. The insured's umbrella policy specified that it covered damages in excess of underlying insurance, but the policy's declaration page specifically listed several underlying policies, including an automobile liability policy issued by GEICO. Id. Siding with the insurance company, the court held that excess insurance was not available because the accident was not covered by the specific GEICO policy listed on the declarations page, but was rather covered by different GEICO policy that was not listed. Id. at 563-64. The court explained

that "the provisions of the umbrella policy were clear and unambiguous, and did not apply to any and all automobile accidents and liabilities," only those policies listed in the declaration page. Id. at 564.

Unlike the policy in Hasbani, U.S. Liability's Umbrella Policy does not list specific insurance policies in a schedule that definitively constitute "Underlying Insurance." Instead, the term "Underlying Insurance" is defined broadly based upon policy limits, rather than by specific policy numbers or other parameters. Moreover, the declarations section indicates that the risks assumed by U.S. Liability under the Umbrella Policy are not limited to automobile accidents that take place while the insured is in a specifically designated vehicle. The Umbrella Policy's declarations section lists three "policy exposures": (1) five "Residences", (2) two "Automobiles", and (3) two "Drivers"-- Anthony Lisena and Monique Lisena. (Umbrella Policy at 3.) In addition, Item 6 within the declarations section requires that underlying insurance be obtained in five categories: (1) "Automotive Liability," (2) "Comprehensive Personal Liability & Rental Property Liability," (3) "Recreational Vehicle Liability," (4) "Watercraft Liability," and (5) "Uninsured/Underinsured Motorist Liability." (Umbrella Policy at 4.)

U.S. Liability points to language in Item 6 of the declarations section in support of its argument that the

13

Harleysville Policy, which is a commercial automobile policy, cannot constitute "Underlying Insurance." (See USLI's Opp. Br. at 6.) According to U.S. Liability, the language of Item 6 definitely establishes that the applicable Underlying Insurance only insures "residences, automobiles, recreational vehicles or watercraft, owned by, leased or regularly furnished to you." However, a closer look at Item 6 reveals that this clause merely sets minimum limits for specific underlying insurance policies that the insureds promised to maintain during the policy period. However, the definition of underlying insurance is broad enough to cover additional policies that the insureds were not required to purchase pursuant to Item 6. Thus, contrary to U.S. Liability's assertions, there is no specific language preventing a commercial policy from serving as Underlying Insurance.

Nevertheless, there are elements of the Umbrella Policy that suggest the Merchants Policy, and not the Harleysville Policy, should serve as "Underlying Insurance." For instance, the declarations section lists only "2" automobiles as "Policy Exposures," which is consistent with the two personal vehicles covered by the Merchants Policy. Moreover, the Umbrella Policy includes an endorsement limiting the definition of "Automobile" to a "private passenger motor vehicle, motorcycle, moped, or mobile home . . . ." (Umbrella Policy at 17.) And this limitation is consistent with the Merchants Policy, which does list any

14

commercial vehicles in its declarations. However, it is also clear that the Umbrella Policy does not simply provide excess insurance for automobile accidents involving private passenger vehicles. In addition to automobile insurance, the Umbrella Policy provides "comprehensive Personal Liability" insurance for any "accident" which results in "personal injury," and for which no exclusions apply. Here an accident has occurred, the Harleysville Policy is providing coverage for the accident, and the Harleysville policy meets the definition of "Underlying Insurance" in the Umbrella Policy. Given these conflicting provisions of the Policy, the Court finds that the Umbrella Policy is ambiguous as to whether the Harleysville Policy can serve as "Underlying Insurance." But since any ambiguities in an insurance contract must be construed against the drafter and in favor of the insured, see Annunziata, 67 N.Y.2d at 232, 492 N.E.2d at 1207, the Court finds that the Harleysville Policy can serve as "Underlying Insurance," triggering US Liability's obligation to provide excess coverage for the accident.

III. No Exclusions Apply in the Umbrella Policy

U.S. Liability also argues that the accident is excluded from coverage under the Umbrella Policy because it occurred while Anthony Lisena was engaged in a "business activity." (USLI's Br. at 20.) There is no dispute that when the accident occurred, Anthony Lisena was on his way to dump the contents of his Truck

15

and was thus engaged in a business activity. For this reason, U.S. Liability points to exclusions "G" and "T," which state as follows:

> III. EXCLUSIONS.
> Under Coverage A, we will not provide coverage for a loss:
> ***
> G. Caused by your business or business property unless underlying insurance provides coverage for the loss.
> ***
> T. Arising out of any automobile provided to any insured by the employer of any insured, its replacement or substitute unless underlying insurance provides coverage for the loss.

(Umbrella Policy § III(G), (T).) Although Exclusions G and T remove accidents involving business activities from coverage, both Exclusions are modified by the clause "unless underlying insurance provides coverage for the loss." Thus, Exclusions G and T are rendered inoperative when Underlying Insurance provides coverage for the accident at issue. Here, since the Harleysville Policy meets the definition of "Underlying Insurance," both Exclusions are rendered inoperative and the accident is not excluded merely because it occurred during the course of business activity.

IV. <u>Merchants' Motion to Dismiss</u>

Merchants also filed a motion to dismiss Luna's Third-Party Complaint, arguing that it is premature for Luna to sue it directly. (Docket Entry 62.) Luna does not oppose the motion, nor does he argue in any of his summary judgment papers that the

Merchants Policy affords coverage for the accident.  Therefore, Merchant's motion is GRANTED and Merchants is DISMISSED WITHOUT PREJUDICE as a party to this action.

CONCLUSION

For the foregoing reasons, U.S. liability's motion for summary judgment (Docket Entry 64) is DENIED, Defendant and Third-Party Plaintiff Luna's motion for summary judgment (Docket Entry 63) is GRANTED, and Third-Party Defendant Merchants Preferred Insurance Company's ("Merchants") motion to dismiss (Docket Entry 62) is GRANTED.  The Clerk of the Court is directed to TERMINATE Merchants as a party to this action.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __8__, 2016
　　　　　Central Islip, New York